IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          )
                                  )
        vs.                       )    Criminal No. 04-58
                                  )    See Civil Action No. 07-1552
DARRYLL L. BRISTON,               )
                                  )
        Defendant/petitioner.     )

## MEMORANDUM OPINION

BLOCH, District J.

Petitioner, on July 2, 2007, filed a pro se "Motion for a
New Trial, Evidentiary Hearing and Memorandum of Law Grounded on
Newly Discovered Evidence in the 'Interests of Justice'" (Doc. No.
98), which the Court construed as a motion under 28 U.S.C. § 2255.
After counsel was appointed, Petitioner subsequently withdrew the
pro se motion and filed, through counsel, a "Motion to Vacate, Set
Aside or Correct Sentence Conviction Pursuant to 28 U.S.C. § 2255"
(Doc. No. 113). Upon consideration of this motion, and upon further
consideration of the Government's responses thereto (Doc. Nos. 119
and 121) and Petitioner's "Supplement to Motion to Vacate" (Doc. No.
118), filed on December 5, 2007, and "Rebuttal of Government's
Response to Motion to Vacate" (Doc. No. 122), filed on December 28,
2007, the Court denies Petitioner's motion for the reasons set forth
below.

1

## I.        **Background**

On July 29, 2004, a second superseding indictment was returned by a grand jury charging Petitioner with four offenses: one count of deprivation of civil rights under color of law, in violation of 18 U.S.C. § 242 (Count One), one count of theft from an organization receiving federal funds, in violation of 18 U.S.C. § 666(a)(1)(A) (Count Two), and two counts of obstruction of justice, in violation of 18 U.S.C. §§ 1503 and 2 (Counts Three and Four). (Doc. No. 34). Petitioner's trial on these charges commenced on October 25, 2004, in the United States District Court for the Western District of Pennsylvania. On November 1, 2004, the jury returned a guilty verdict on all counts. (Doc. No. 54). On January 26, 2005, the Court sentenced Petitioner to 12 months' imprisonment at Count One and 37 months' imprisonment at each of Counts Two, Three, and Four, all to be served concurrently, and to be followed by three years' supervised release. (Doc. No. 71).[1]

Petitioner subsequently appealed and challenged his conviction, raising several arguments before the Third Circuit Court of Appeals: (1) that the evidence was not sufficient to establish that the value of the property at issue at Count Two was at least $5000 as required by 18 U.S.C. § 666(a)(1)(A)(I); (2) that the funds provided to Rankin Borough under the Equitable Sharing Program were

---

[1]     The 37-month term of imprisonment at Count Four consisted of a sentence of 31 months pursuant to Section 1503 and a consecutive 6-month sentence pursuant to 18 U.S.C. § 3147.

not "benefits" within the meaning of Section 666(b); (3) that the Community Development Block grants from the Department of Housing and Urban Development received by the Borough did not constitute "benefits" within the meaning of Section 666(b); (4) that the Court erred in instructing the jury that the afore-mentioned payments constituted benefits within the meaning of Section 666(b); (5) that the Court erred in excluding testimony concerning accusations against Rankin's mayor; and (6) that the Court erred by referring to the alleged victim in Count One as "a person" rather than by name in its jury instructions. On July 14, 2006, the Third Circuit affirmed Petitioner's conviction and the findings of the District Court.

As noted above, on July 2, 2007, Petitioner filed his pro se "Motion for a New Trial, Evidentiary Hearing and Memorandum of Law Grounded on Newly Discovered Evidence in the 'Interests of Justice'" (Doc. No. 98), which the Court construed as a motion under 28 U.S.C. § 2255, and which was, in fact, re-filed as Petitioner's "Motion to Vacate Under 28 U.S.C. § 2255" on July 25, 2007. On July 26, 2007, in accordance with United States v. Miller, 197 F.3d 644 (3d Cir. 1999), the Court issued an Order advising Petitioner that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prohibits consideration of a second or successive habeas petition absent certification from the Third Circuit that certain very specific and rare circumstances exist. With that in mind, Petitioner was ordered to advise the Court as to how he wished to

3

proceed in this case, specifically, whether he wished to have his motion ruled upon as filed and lose the ability to file successive petitions absent Third Circuit certification, or whether he wished to withdraw the motion and file one all-inclusive Section 2255 petition within the one-year statutory period of the AEDPA. (Doc. No. 105).

On September 10, 2007, upon Petitioner's request, the Court appointed counsel to represent Petitioner in all matters relating to his motion. (Doc. No. 109). Subsequent to the appointment of counsel, on October 10, 2007, Petitioner filed a motion to withdraw his original motion and file an all-inclusive motion. (Doc. No. 111). The Court granted this motion. On November 13, 2007, Petitioner filed, through counsel, a "Motion to Vacate, Set Aside or Correct Sentence Conviction Pursuant to 28 U.S.C. § 2255," which also incorporated Petitioner's original motion. (Doc. No. 113). Furthermore, on December 5, 2007, Petitioner, again through counsel, filed a "Supplement to Motion to Vacate." (Doc. No. 118).

The Court will address the claims raised in this motion, including the supplement and incorporated pro se motion, below.

## II.     **Discussion**

As discussed, some of Petitioner's claims have been raised pro se. Pro se pleadings are held to less stringent standards than formal pleadings drafted by lawyers. See Haines v. Kerner, 404 U.S.

4

519, 520 (1972); Holley v. Department of Veterans Affairs, 165 F.3d 244, 247 (3d Cir. 1999). However, even a pro se plaintiff must be able to prove a "set of facts in support of his claim which would entitle him to relief." Haines, 404 U.S. at 520-21 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). However, the Court notes that counsel has been appointed and has, in fact, filed several documents on Petitioner's behalf in this case.

Petitioner brings his motion pursuant to 28 U.S.C. § 2255. This statute permits a "prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States...[to] move the court which imposed the sentence to vacate, set aside or correct the sentence." An evidentiary hearing is not required on a Section 2255 motion if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255.

Petitioner does not always explicitly indicate the nature of the grounds upon which he claims he is entitled to relief under Section 2255, but it appears that the majority of his claims relate to the alleged ineffective assistance rendered by his trial counsel in violation of the Sixth Amendment. He appears to also raise claims of prosecutorial misconduct. For the reasons that follow, the Court finds no merit in any of Petitioner's claims and finds

5

that the record conclusively shows that he is not entitled to relief under Section 2255 on any of the grounds he alleges.[2]

## A.  **Ineffective Assistance of Counsel**

As noted, the majority of Petitioner's claims relate to the alleged ineffective assistance of his counsel. A petitioner seeking relief under Section 2255 on the grounds of ineffective assistance of counsel "must show both that: (1) counsel's representation fell below an objective standard of 'reasonableness under prevailing professional norms;' and (2) the defendant suffered prejudice as a result - that is, there is a reasonable probability that, but for the counsel's deficient performance, the result of the proceeding would have been different." Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996) (citing Strickland v. Washington, 466 U.S. 668, 694 (1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

> In reviewing counsel's performance, [a court] must be highly deferential. [A court] must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. Moreover, [a court] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged

---

[2]     Since the record itself conclusively shows that Petitioner is not entitled to relief, no evidentiary hearing is necessary.

6

> action might be considered sound trial
> strategy.

Sistrunk, 96 F.3d at 670 (citing Strickland, 466 U.S. at 689-90)
(internal quotation marks and citations omitted). "It is only the
rare claim of ineffective assistance of counsel that should succeed
under the properly deferential standard to be applied in
scrutinizing counsel's performance." United States v. Kauffman, 109
F.3d 186, 190 (3d Cir. 1997) (quoting United States v. Gray, 878
F.2d 702, 711 (3d Cir. 1989)).

Petitioner raises several separate grounds on which he
alleges his trial counsel, Caroline Roberto, was constitutionally
ineffective. Each will be addressed below.

### 1. **Failure to Impeach Tamara Brice**

Petitioner first argues that his trial counsel was
ineffective in failing to properly cross-examine Tamara Brice, a
Government witness and a victim in regard to Counts One and Two.
Specifically, he argues that Brice lied under oath at trial about
her work history and that his trial counsel failed to impeach her on
this point. According to Petitioner, Brice was actually receiving
welfare benefits during the period she claims she was working. He
claims that trial counsel should have investigated the witness'
background and that "[c]onfronting Ms. Brice with evidence of her
illegally receiving welfare benefits while working would have done
incalculable damage to her credibility with the jury." The Court
finds no merit in Petitioner's argument.

7

First, Petitioner offers no evidence that Brice's testimony regarding her work history was false or that she even received welfare benefits, much less that she did so illegally. Moreover, he sets forth no basis by which he would have personal knowledge of these allegations. In fact, he does not indicate how or why he would have any way of knowing Brice's work history or that she was illegally receiving welfare benefits.

Indeed, the entire basis of Petitioner's allegation is unclear. It is not apparent whether Petitioner is attempting to argue that Petitioner's illegal receipt of welfare benefits casts doubts on her overall credibility, or as to from where the money at issue came. It is not even clear if he is arguing that she is lying about the jobs she held or whether the jobs she held proves that she was receiving welfare illegally. There is no allegation that Brice has ever been convicted of welfare fraud. This allegation is so lacking in specificity, so vague, and so conclusory, that no further discussion is warranted. See United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000); United States v. Dawson, 857 F.2d 923, 928 (3d Cir. 1988).

However, even if there was an allegation with sufficient specificity regarding this matter, the record demonstrates conclusively that Petitioner would be unable to establish prejudice. First, the Court notes that Brice's testimony went only to the offenses at Counts One and, possibly, Two. It did not impact

8

Petitioner's convictions at Counts Three and Four. Petitioner's convictions at Counts One, Two, Three, and Four were grouped, and his offense level, which was based on his obstruction of justice offenses at Counts Three and Four and on an enhancement not specific to any count (abuse of a position of trust pursuant to USSG § 3B1.3), would remain the same regardless of whether he was convicted at Counts One and Two. Therefore, even if Brice's testimony had been thoroughly discredited, and as a result led to Petitioner's acquittal at Counts One and Two, his offense level would have remained unchanged. A decision to reverse Counts One and/or Two would therefore have virtually no effect, and Petitioner could not then demonstrate prejudice under Strickland. See United States v. Daniels, 209 Fed. Appx. 191 (3d Cir. 2006).

Furthermore, Petitioner does not specify how he would benefit from the discrediting of Brice's testimony. The primary reason for Brice's testimony was to establish that the money at issue in this case belonged to her, and, even discounting Brice's testimony entirely, there is overwhelming evidence in the record establishing that the money at issue was hers, including the testimony of Thomas Swan and several witnesses who testified regarding forging Brice's signature, as well as evidence such as the transcript of the December 10, 2003 proceedings regarding the motion to return the seized money to Brice (Govt. Ex. 15) and the release form that contained Brice's forged signature (Govt. Ex. 1-J).

9

In sum, Petitioner makes no real attempt to develop this argument, his allegations are vague, and he fails to specify the nature of the prejudice involved. Accordingly, the Court will grant no relief on this claim.

## 2. **Failure to Impeach Richard Salters**

Petitioner next argues that his trial counsel was ineffective in failing to impeach Government witness Richard Salters with evidence of his alleged mental illness. While, again, Petitioner's allegations are very vague, he claims that Salters' psychological examination "specifically indicated a diagnoses of particular concern, displaces blame of a very high T-score of 76 on the scale of schizophrenia." No further explanation as to the nature or severity of Salters' alleged mental illness is provided. He argues that counsel's deficient performance prejudiced him as to the allegations set forth in Count Three. Again, the Court finds no merit in this position.

First, the Court notes that Petitioner's trial counsel did, indeed, question Salters during cross examination regarding the psychological component of his evaluation from the Municipality Police Officers' Training Commission and the fact that he had failed this component the first time he was evaluated. (Oct. 26 Trial Tr. at 167). While the issue of displacing blame was not specifically addressed, the issue of Salters' psychological concerns was presented to the jury. Accordingly, it is questionable, at best,

10

whether there is even a colorable claim that counsel's actions were ineffective.

Nonetheless, in any event, the record conclusively demonstrates a lack of prejudice. First, it is important to point out that it is unclear how Salters' alleged propensity to displace blame would be relevant, as there was no allegation raised that he attempted to exonerate himself by placing blame on Petitioner. To the contrary, the conduct in which Salters admitted he participated was illegal, which actually demonstrates an acceptance of blame. Indeed, Petitioner fails to set forth how Salters' alleged condition may have affected his testimony.

Moreover, Salters' testimony regarding the forged evidence release form was corroborated by the testimony of April Hurd, so even if trial counsel was deficient in failing to more thoroughly explore Salters' alleged mental illness, it would have had little, if any, impact on the overall evidence of guilt.[3]

### 3. **Failure to Impeach Jeffrey Novak**

Petitioner next argues that his trial counsel was ineffective in failing to impeach Government witness Jeffrey Novak with evidence that he had not been sworn in as a police officer and his lack of status as a police officer at the time in question. He

---

[3] Further, it should go without saying that the fact that Salters was released from active police duty years after the trial in this case has no relevance here.

claims that it is reasonably probable that this failure prejudiced the outcome of the trial as to Count Four.

This argument borders on frivolous. Novak did not testify in his capacity as a police officer, but rather as to events that occurred during the course of his shift, specifically, placing documents into the evidence locker. Whether or not he was technically a police officer or not at the time was simply not relevant as to the facts to which he testified.[4]

Likewise, there is no reasonable probability that his testimony was given special weight by the jury by virtue of his being identified as a police officer during trial. During voir dire proceedings, the Court asked each juror: "Would you give more weight or less weight to the testimony of a law enforcement officer or other witness who works for a law enforcement agency than you would to the testimony of any other witness simply because that person is a law enforcement officer or works for a law enforcement agency?" Accordingly, any prejudice toward a law enforcement agent would have been brought out during voir dire and subjected any juror answering in the affirmative to dismissal for cause or, at the very least, dismissal on preemptory challenge. Accordingly, the record conclusively demonstrates that there was no prejudice.

---

[4] The Court further notes that acceptance of the oath of office may be a legal requirement for becoming a police officer, but the lack of an official acceptance of oath does not inherently reflect upon the character or veracity of an individual or his or her testimony.

12

## 4. **Failure to Raise Legal Arguments**

Petitioner further argues that his trial counsel was ineffective in failing to challenge Count Two of the second superseding indictment on grounds that it did not state an offense. Essentially, he argues that counsel should have anticipated the statutory analysis and legal arguments addressed by the Seventh Circuit Court of Appeals in United States v. Abu-Shawish, 507 F.3d 550 (7th Cir. 2007), and raised those same arguments almost three years earlier. He contends that such an argument would have led to the dismissal of Count Two and that he was therefore prejudiced by the failure to raise the argument. The court disagrees.[5]

First, Petitioner misrepresents the nature of the Abu-Shawish opinion. In that case, the Seventh Circuit decided the issue of whether a criminal defendant must be an agent of the organization that he defrauded to be convicted under 18 U.S.C. § 666(a)(1)(A). Significantly, the indictment in that case indicated that the funds obtained were those of the City of Milwaukee, but that the defendant was an agent of another organization on whose behalf the defendant had obtained funds from the city. The issue, then, was whether Section 666(a)(1)(A) contemplated that the "organization" at issue would be both the organization from which funds were illegally obtained and the organization of which the

---

[5] The Court notes that since it disagrees with Petitioner's position on the merits, it need not resolve the issue of whether this argument relates back to issues timely raised.

defendant was an agent. The facts here are very different; there is not an issue of multiple organizations. The second superseding indictment alleges that Petitioner was an agent of the same organization from which he illegally obtained funds - the Rankin Borough Police Department. There is no issue of Petitioner being an agent of an organization other than the one from which the funds came.

Petitioner seems to rely on dicta in Abu-Shawish that implies that Section 666(a)(1)(A) would not cover a situation in which an agent of an organization fraudulently obtained funds from an individual not affiliated with the Government even if those funds were subsequently in the custody of the agent's organization and that organization incidentally and independently received $10,000 in federal funds that year. See 507 F.3d at 556-57. However, first, as mentioned, this language is dicta, as this was not the issue in that case. Second, in this case, unlike the case in Abu-Shawish, the organization of which Petitioner was an agent was in care, custody, or control of the money taken by Petitioner. Although the money was ultimately to be returned to Brice, Petitioner did not unlawfully obtain the money in question directly from Brice; the money first had been taken into the custody of the Rankin Borough Police Department. The theft was of property entrusted to the Borough at the time, even if that property ultimately was to be returned to another. This is very different from the defendant in

14

Abu-Shawish, who directly defrauded not his own organization, but rather the City of Milwaukee.[6]

In any event, even if Abu-Shawish were on point, which it is not, it was not unreasonable for trial counsel not to have anticipated dicta from a non-binding decision issued almost three years later. Petitioner tries to argue that the decision in Abu-Shawish was based on case law existing at the time of his trial. However, this is simply not the case. The Second and Eleventh Circuit cases upon which Petitioner claims the Seventh Circuit relied in Abu-Shawish dealt with very different issues. Likewise, the Third Circuit's decision in United States v. Cicco, 938 F.2d 441 (3d Cir. 1991), dealt with very different issues. Indeed, Cicco was not even a 666(a)(1)(A) case; it was a case dealing with the bribery provisions of Section 666(a)(1)(B). The general statements in that decision about the purpose of Section 666 being to protect federal funds, in the context of the bribery case at issue, in no way anticipated the dicta in Abu-Shawish upon which Petitioner relies.[7]

---

[6]     Indeed, under Petitioner's construction of Abu-Shawish, the case would contradict the plain language of Section 666(a)(1)(A), which does not require that the organization from which funds are illegally obtained have an ownership interest in the property. Rather, the statute provides that the property must by "owned by, **or** [] under the care, custody, or control of such organization, government, or agency." (Emphasis added).

[7]     The Court notes that Cicco predates the Supreme Court's decision in Sabri v. United States, 541 U.S. 600 (2004), which clarified that there need not be a nexus between the funds federally obtained and the funds stolen.

15

Indeed, the Seventh Circuit itself, in Abu-Shawish, indicated that neither it nor the other circuits had ever dealt with this specific issue before. 507 F.3d at 557.

In general, there is no duty on the part of defense counsel to anticipate changes in the law. See Sistrunk, 96 F.3d at 670-71; Government of the Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989).[8] To expect trial counsel to have anticipated that a court may be receptive to the position set forth in dicta in Abu-Shawish asks not for an objective standard of reasonableness under prevailing professional norms, but rather prescience. Counsel raised numerous issues attacking Count Two of the second superseding indictment; a claim that the failure to raise this additional argument which had no legal support beyond Petitioner's own interpretation of later dicta has no merit.

Regardless, as in regard to Petitioner's arguments regarding Tamara Brice, this argument pertains only to the offense at Count Two. As discussed, Petitioner's convictions at Counts One, Two, Three, and Four were grouped, and his offense level would remain unchanged even without a conviction at Count Two. Accordingly, Petitioner could not demonstrate prejudice under Strickland. See Daniels, 209 Fed. Appx. 191.

---

[8]     Moreover, the reasonableness of counsel's challenged conduct must be "viewed as of the time of counsel's conduct." Sistrunk, 96 F.3d at 670.

16

## 5. **Additional Issues Raised by Petitioner Pro Se**

In addition to the issues raised both by Petitioner pro se and by his counsel, there are several issues raised only by Petitioner in his original filing, which was incorporated into the present motion, in regard to his counsel's alleged ineffective assistance. Although these arguments can be difficult to understand, the Court, mindful of the special treatment given to pro se pleadings, has done its best to interpret Petitioner's arguments. Nonetheless it finds no merit in any of them.[9]

Petitioner first raises an argument regarding the testimony of Government witness Mary Houghton and Government Exhibit 10, a guide to equitable sharing of forfeited property. At various parts of this argument, Petitioner claims that Houghton lied under oath, that Exhibit 10 was not provided to him, in violation of Brady v. Maryland, 373 U.S. 83 (1963), and that Exhibit 10 did not exist in its entirety until after his trial was completed. While the precise nature of these claims is unclear, in any event, the Court finds that even if his counsel was deficient in some way, Petitioner was not prejudiced for the same reasons set forth in regard to his similar arguments in connection with alleged prosecutorial misconduct set forth in subpart B below.

---

[9]     Moreover, again, since all of Petitioner's claims relate to Counts One and/or Two, they would have no effect on his sentence and, accordingly, he cannot demonstrate prejudice. See Daniels, 209 Fed. Appx. 191.

17

Petitioner also argues that his counsel was ineffective in rebutting Tamara Brice's testimony in that she failed to call as a witness ATF Agent Ed Whitaker and failed to introduce into evidence an ATF report which Petitioner claims contradicted Brice's claim that the money seized belonged to her. The Court finds no merit in Petitioner's position.

First, to establish prejudice under Strickland, Petitioner cannot rely on mere speculation as to what Whitaker's testimony would have been, but rather, must demonstrate what his actual testimony would be. See Rolan v. Vaughn, 445 F.3d 671, 682 (3d Cir. 2006). Petitioner has failed to submit any affidavits as to the nature of Whitaker's testimony. Likewise, he has failed to submit the ATF report which he claims contradicts Brice's testimony. Petitioner's own unsubstantiated claims are not sufficient to warrant further investigation of this issue.

However, in any event, Petitioner's claim lacks merit. The very first witness in the case, Bradt Schanken, testified that Brice had told agents at the scene that the money in the safe that was seized was not hers. (Oct. 25 Trial Tr. at 51). Petitioner's counsel brought this point up again on cross examination and, indeed, questioned Schanken about the ATF report at issue. Id. at 57-60. She also cross examined Brice on this point. Id. at 110. It is unclear why Whitaker's testimony would have been necessary in

light of the fact that the very evidence Petitioner claims he would have provided was before the jury.

Finally, Petitioner argues that his counsel was ineffective in failing to object to the admission of recorded conversations obtained, according to Petitioner, without a proper wiretap authorization. However, contrary to Petitioner's contentions, the recordings at issue were made with the prior consent of Brice, a party to the communications, and therefore were not subject to the federal wiretapping provisions. See Oct. 25 Trial Tr. at 98; 18 U.S.C. § 2511(2)(c); United States v. Lee, 359 F.3d 194, 203 (3d Cir. 2004); United States v. Antoon, 933 F.2d 200, 203 (3d Cir. 1991).

## B.  **Prosecutorial Misconduct**

Petitioner also raises several issues not involving the conduct of his counsel, but rather, the conduct of the Government's attorneys. As with his other claims, the Court finds no merit in Petitioner's position.

The Court first notes that there was no reason that Petitioner could not have raised these issues on direct appeal. "Section 2255 petitions are not substitutes for direct appeals and serve only to protect a defendant from a violation of the constitution or from a statutory defect so fundamental that a complete miscarriage of justice has occurred." United States v. Cepero, 224 F.3d 256, 267 (3d Cir. 2000) (citing Reed v. Farley, 512

19

U.S. 339, 348 (1994)). See also United States v. Essig, 10 F.3d 968, 979 (3d Cir. 1993) ("[Section] 2255 is no longer a necessary stand-in for the direct appeal of a sentencing error because full review of sentencing errors is now available on direct appeal."). Arguments that could have been made on direct appeal cannot be raised in a Section 2255 motion unless the petitioner can demonstrate cause and prejudice. See Essig, 10 F.3d at 979 (holding that the cause and prejudice standard of United States v. Frady, 456 U.S. 152, 167-68 (1982), "applies to § 2255 proceedings in which a petitioner seeks relief from alleged errors in connection with his sentence that he has not directly appealed"); Bousley v. United States, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'") (citations omitted).

"In procedural default cases, the cause standard requires the petitioner to show that 'some objective factor external to the defense impeded counsel's efforts' to raise the claim." Essig, 10 F.3d at 979 (quoting McCleskey v. Zant, 499 U.S. 467, 493 (1991)). Here, Petitioner fails to set forth any basis for his failure to raise any of his remaining claims on appeal, and therefore, this basis for relief should be denied on that basis.

However, in any event, there is no merit to the substance of Petitioner's claims. Under Section 2255, relief for prosecutorial misconduct is appropriate when the prosecutor's misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." United States v. Mangiardi, 173 F. Supp. 2d 292, 303 (M.D. Pa. 2001) (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)). See also United States v. Ratigan, 351 F.3d 957, 964 (9th Cir. 2003). "For due process to have been offended, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." Mangiardi, 173 F. Supp. 2d at 303 (quoting Werts v. Vaughn, 228 F.3d 178, 197-98 (3d Cir. 2000)).

Petitioner's claims do not approach the level required to establish a denial of due process. His arguments as to Government witness Houghton lying under oath are particularly suspect. Indeed, it is not clear what precisely he is claiming she lied about. To the extent that he is claiming that she was lying about the Borough of Rankin having completed an Application for Transfer of Federally Forfeited Property (DAG-71) form, his argument seems to be based solely on the fact that a completed form was not offered into evidence. However, Government Exhibit 11, consisting of letters between the United State Attorney and Rankin Police Department (and specifically Petitioner), clearly proves that the Rankin Police Department did apply for funds through the equitable sharing program

21

in 2003 and that the department did receive equitable sharing benefits.[10] Houghton's testimony was consistent with this exhibit and Petitioner offers no basis for believing that Houghton was lying about the existence of a DAG-71 form, and the Court is not bound to merely accept his self-serving, unsubstantiated claims.[11]

The Court likewise finds no merit in Petitioner's claims that the Government violated his due process rights by failing to provide certain information, particularly Government Exhibit 10, a guide to equitable sharing of forfeited property, in violation of Brady. The Court first notes, even assuming Petitioner did not receive a copy of the guide prior to the trial in this case from the Government, the document was publicly available (and in fact available online), so there is no reason Petitioner could not have obtained it on his own. It is well established that the Government

---

[10] Indeed, his entire argument on this point seems tied to his contention that there was no "binding agreement" between the Federal Government and Rankin Borough. Section 666(b) makes no reference, though, to a requirement of a "binding agreement," and Exhibit 11 demonstrates that, in any event, the Borough, and specifically the Police Department, did receive payments in excess of $10,000 through the equitable sharing program.

[11] The Court does not understand Petitioner's contention that the guide to equitable sharing of forfeited property did not exist at the time of trial. Likewise, it is unclear what "false testimony" Houghton gave as to this exhibit. Further discussion is simply not warranted in regard to these vague, conclusory allegations. See Thomas, 221 F.3d at 437; Dawson, 857 F.2d at 928. Further, to the extent he is arguing that the blank sample DAG-71 form contained in Exhibit 10 contradicts Houghton's testimony that Rankin Borough had completed such a form, such a claim is frivolous. There is no claim that the sample DAG-71 form in Exhibit 10 is the actual one submitted by Rankin Borough.

22

is not obliged under <u>Brady</u> to furnish a defendant with information he can obtain for himself with reasonable diligence. See <u>United States v. Pelullo</u>, 399 F.3d 197, 202 (3d Cir. 2005).

Regardless, even if this document were not publicly available, there would be no <u>Brady</u> violation here. To establish a due process violation under <u>Brady</u>, a defendant must show that: (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material either to guilt or to punishment. See <u>Pelullo</u>, 399 F.3d at 209. Neither of the last two requirements are met here. The guide is in no way particularly favorable to the defense; indeed, it was the Government that introduced it into evidence. Moreover, it was not material to guilt or punishment; it was Rankin Borough's participation in the equitable sharing program, and not the specifics of its operation, that was material here. Indeed, an exhibit regarding the operation of the program was probably not strictly necessary at all, as the nature of the program is set forth at 21 U.S.C. § 881(e), and courts have held that such payments constitute benefits under Section 666(a). See <u>United States v. Nichols</u>, 40 F.3d 999 (9th Cir. 1994).

Petitioner also makes vague contentions that the Government aided the perjury of Tamara Brice. As discussed above, the fact that Brice originally indicated that the money at issue was not hers was brought out at trial, and, indeed, brought out by the Government. Moreover, as with many of his claims, Petitioner

provides no basis for any knowledge that the Government intentionally aided in any perjury by Brice.[12]

Finally, as discussed above, Petitioner's argument that recorded conversations between him and Brice were obtained without a proper wiretap authorization has no merit. As discussed, the recordings at issue were made with the prior consent of Brice, a party to the communications, and therefore were not subject to the federal wiretapping provisions. See Oct. 25 Trial Tr. at 98; 18 U.S.C. § 2511(2)(c); Lee, 359 F.3d at 203; Antoon, 933 F.2d at 203.

## III.    Conclusion

For all of the above-stated reasons, Petitioner's motion is denied in its entirety. Further, this Court will not issue a certificate of appealability in this case. A certificate of appealability may issue under 28 U.S.C. § 2255 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. 2253 (c) (2). For the reasons set forth above, Petitioner has not made a substantial showing of the denial of a constitutional right and a certificate of appealability should not issue in this action.

---

[12]    Petitioner's vague contention that the Government "interfered with subpoenaing (ATF) agent Ed Whitaker" requires no further discussion, since, as discussed above, no prejudice would result from this alleged interference, even if it could be established.

24

An appropriate Order will be issued.

_Justaut Diamond_
United States District Judge
(For Judge Alan N. Bloch)

Dated:   February __18__, 2009

ecf:   Counsel of record